ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 1 6 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TPI HOLDINGS, INC., and DOMINION ENTERPRISES, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| WESLEY SMITH, JIMMIE SMITH, and MACKENZIE SMITH, individually and dba Motohost, and JOHN DOES 1 through 10 | ) ) ) ) ) ) |
| Defendants. | ) ) |

Civil Action No.:

**1 09-cv-1919**

**BBM**

## COMPLAINT

Plaintiffs TPI Holdings, Inc. and Dominion Enterprises (collectively "TPI") state the following for their Complaint against Defendants Wesley Smith, Jimmie Smith, and MacKenzie Smith, individually and dba Motohost, and John Does 1 through 10 (collectively "Defendants"):

### <u>Nature of the Action</u>

1.      This is an action at law and in equity for trademark infringement, cybersquatting, and unfair competition arising under the federal Lanham Act, codified as amended at 15 U.S.C. §§ 1051-1127, the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and state statutory and common law, arising out

1

of the Defendants' registration and use of multiple domain names and use of multiple trademarks that are confusingly similar to Plaintiff's long-established and well-known TRADER marks.

## Jurisdiction and Venue

2.    This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 15 U.S.C. §§ 1331 and 1338.

3.    This Court has personal jurisdiction over Defendants because Defendants are transacting business within this district, have engaged in acts or omissions within this district causing injury, or have otherwise made or established contacts with this district sufficient to permit the exercise of personal jurisdiction.

4.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim have occurred and are occurring in this district.

## Parties

5.    Plaintiff TPI Holdings, Inc. ("TPI") is a corporation organized under the laws of the State of Delaware with its principal place of business located in this District, in Atlanta, Georgia.  TPI is the owner of the trademarks and trademark registrations at issue in this suit.

2

US2008 737439.2

6.    Plaintiff Dominion Enterprises ("Dominion") is a partnership organized under the laws of Virginia, with its principal place of business located in Norfolk, Virginia. Dominion is the licensee of the trademarks at issue in this suit and the registrant of the domain names consisting of the trademarks at issue. TPI, Dominion, and their predecessors, licensees, and affiliates are collectively hereinafter referred to as "TPI" or "Plaintiffs."

7.    Defendant Wesley Smith is an individual who may be served at 100 Mount Moriah Road, Benton, Kentucky, 42025. Defendant is one of the owners of the domain names at issue and one of the operators of the websites at issue in this case.

8.    Defendant Jimmie Smith is an individual who may be served at 712 Moors Camp Highway, Benton, Kentucky, 42025. Defendant is one of the owners of the domain names at issue and one of the operators of the websites at issue in this case.

9.    Defendant MacKenzie Smith is an individual who may be served at 712 Moors Camp Highway, Benton, Kentucky, 42025. Defendant is one of the owners of the domain names at issue and one of the operators of the websites at issue in this case.

3

10.    Defendants John Does 1 through 10 (the "Doe Defendants") are persons and entities whose true names and identifies are unknown to TPI at this time due to the named Defendants having masked the identities of the true owners of the domain names at issue.  The Doe Defendants have acted jointly and in concert with the named Defendants and have aided, abetted, and participated in the wrongful registration and use of the domain names at issue and use of the marks at issue.  TPI will amend the Complaint to add the true names of the Doe Defendants upon the unmasking of their names.

11.    Defendants are acting jointly and severally to use and promote the infringing marks and domain names at issue in this case.

## FACTUAL BACKGROUND

### TPI's Trademark and Service Mark Rights

12.    For more than thirty years, TPI has adopted and used a family of trademarks using the term "TRADER" in conjunction with another term or phrase, relating to vehicles or classified advertising, such as "BARGAIN," "AUTO," or "FREE ADS" (the "TRADER Marks"), including the marks AUTO TRADER, AERO TRADER, BARGAIN TRADER, BOAT TRADER, CYCLE TRADER, OLD CAR TRADER, BIG TRUCK TRADER, RV TRADER, TRADER PLUS, FREE ADS TRADER and TRADER ONLINE, among others.

4

13.    From the beginning, TPI used the TRADER family of marks in connection with a number of different print publications offering classified advertising distributed throughout the United States.  Since 1996, in addition to the print publications, TPI has also offered classified advertising online in connection with the TRADER Marks.

14.    TPI is the owner of multiple federal registrations for its TRADER Marks, including the following:

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| AERO TRADER | 2288805 | 10/26/1999 |
| AERO TRADERONLINE.COM | 2873918 | 08/17/2004 |
| ATV TRADERONLINE.COM | 2868892 | 08/03/2004 |
| AUTO TRADER | 2390815 | 10/03/2000 |
| AUTO TRADER | 1247037 | 08/02/1983 |
| AUTOTRADER.COM | 2381590 | 08/29/2000 |
| BARGAIN TRADER | 2294228 | 11/23/1999 |
| BARGAIN TRADER | 1207204 | 09/07/1982 |
| BARGAIN TRADERONLINE.COM | 2901427 | 11/09/2004 |
| BIG TRUCK TRADER | 2829945 | 04/06/2004 |
| BIG TRUCK & EQUIPMENT TRADER | 1641262 | 04/16/1991 |
| BOAT & RV TRADER | 1450690 | 08/04/1987 |
| BOAT TRADER | 2389118 | 09/26/2000 |
| BOAT TRADER | 1208249 | 09/14/1982 |
| BOAT TRADERONLINE.COM | 2873930 | 08/17/2004 |
| COLLECTOR CAR TRADER | 2294233 | 11/23/1999 |
| COLLECTOR CAR TRADERONLINE.COM | 2873929 | 08/17/2004 |
| COMMERCIAL & BIG TRUCK TRADER | 3316348 | 10/23/2007 |
| COMMERCIAL TRUCK TRADER | 3605107 | 04/14/2009 |
| CYCLE TRADER | 2294240 | 11/23/1999 |
| CYCLE TRADER | 1627016 | 12/11/1990 |
| CYCLE, BOAT, & RV TRADER | 1450707 | 08/04/1987 |

5

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| EQUIPMENT TRADER | 3420543 | 04/29/2008 |
| EQUIPMENT TRADER | 3605275 | 04/14/2009 |
| EQUIPMENT TRADERONLINE.COM | 2873928 | 08/17/2004 |
| FREE ADS TRADER | 1886026 | 03/28/1995 |
| HOUSE TRADER | 2909671 | 12/14/2004 |
| OLD CAR TRADER | 1911290 | 08/15/1995 |
| OLD CAR TRADER | 2348530 | 05/09/2000 |
| PICK-UP TRADER | 1644398 | 05/14/1991 |
| PICK-UP TRADER | 2295507 | 11/30/1999 |
| RV TRADER | 2294239 | 11/23/1999 |
| RV TRADER | 1822663 | 02/22/1994 |
| RV TRADERONLINE.COM | 2876679 | 08/24/2004 |
| SAILBOAT TRADER | 1612906 | 09/11/1990 |
| SAILBOATTRADERONLINE.COM | 3208475 | 02/13/2007 |
| TRADER DISTRIBUTION SERVICES | 2883861 | 09/14/2004 |
| TRADER ONLINE | 2302312 | 12/21/1999 |
| TRADER PLUS | 2885985 | 09/21/2004 |
| TRADER TIMES | 1718017 | 09/22/1992 |
| TRADERONLINE.COM | 3161680 | 10/24/2006 |
| TRUCK TRADER | 2817176 | 02/24/2004 |
| TRUCK TRADERONLINE.COM | 2871209 | 08/10/2004 |
| WALNECK'S CLASSIC CYCLE TRADER | 2288432 | 10/26/1999 |
| YACHT TRADER | 1648145 | 06/18/1991 |
| YACHT TRADER | 2349954 | 05/16/2000 |
| YACHT TRADERONLINE.COM | 3173201 | 11/21/2006 |

True and correct copies of print-outs from the U.S. Patent and Trademark Office online database showing these registrations are attached as Collective Exhibit A. All of these registrations constitute prima facie evidence, and those that are incontestable constitute conclusive evidence, of the validity of the marks and TPI's exclusive right

US2008 737439.2

to use the marks in connection with the goods and services specified in the registrations.

15.    Since the adoption of each of the TRADER Marks, TPI has made widespread and continuous use of them, and promoted them together, in connection with services offered to the public throughout the United States.

16.    Specifically, through its predecessors in interest, TPI began using its first TRADER mark, the AUTO TRADER mark, at least as early as 1974 to provide classified advertising respecting automotive vehicles. A true and correct copy of the front cover of an AUTO TRADER magazine is attached as Exhibit B.

17.    Beginning in at least 1996, TPI extended use of the AUTO TRADER mark to provide advertising and merchandising classifieds via an online electronic communications network. Since that time, TPI has featured its offerings under the AUTO TRADER mark at a website accessible under the autotrader.com domain name. A true and correct print-out of the homepage reached through the domain name autotrader.com is attached as Exhibit C.

18.    In addition, TPI, through its predecessors in interest, expanded use of TRADER formative marks into multiple publications and ultimately multiple websites offering classified advertising in a wide variety of areas. For example, TPI began using the BARGAIN TRADER mark at least as early as 1975 to provide

7

classified advertising in a number of categories of goods; the BOAT TRADER mark

at least as early as 1976 to provide classified advertising respecting boats; the

CYCLE TRADER and AERO TRADER marks at least as early as 1978 to provide

classified advertising respecting motorcycles and airplanes respectively; the RV

TRADER mark in 1989 to provide classified advertising respecting RV's; the

YACHT TRADER mark in 1990 to provide classified advertising respecting yachts

and luxury boats; and the COLLECTOR CAR TRADER and OLD CAR TRADER

marks in 1991 and 1995 respectively to provide classified advertising respecting

niche market automotive vehicles.  True and correct copies of representative front

covers of magazines distributed under these marks are attached as Collective Exhibit

D.

      19.    Beginning in at least 1996, TPI extended use of the BOAT TRADER,

RV TRADER, CYCLE TRADER, and AERO TRADER marks to provide

advertising and merchandising classifieds respecting the various goods and services

they featured via an online electronic communications network.  Since that time, TPI

has featured its offerings under the BOAT TRADER mark at its boattrader.com and

boattraderonline.com websites, under the RV TRADER mark at its website at

rvtraderonline.com, under the AERO TRADER mark at its website at aerotrader.com

and aerotraderonline.com, and under the CYCLE TRADER mark at its website at

8

cycletrader.com and cycletraderonline.com. At that time, TPI also began using its TRADER ONLINE mark at traderonline.com, where it promoted all of its offerings under all of its TRADER marks. In 1999, TPI also began promoting its offerings under the YACHT TRADER mark at its site at yachttraderonline.com and began promoting its BARGAIN TRADER mark at its bargaintraderonline.com, bargaintrader.com, and traderonline.com sites. True and correct print-outs of representative homepages reached through TRADER domain names and/or featuring TRADER marks are attached as Collective Exhibit E.

20.    TPI has invested more than thirty years of continuous and substantial corporate efforts and hundreds of millions of dollars to strengthen and promote the reliability of goods and services provided under, and identified by, its family of TRADER Marks. TPI has distributed hundreds of millions of TRADER magazines through tens of thousands of outlets, and online sites operated under the TRADER marks have carried millions of ads and attract hundreds of millions of visitors annually.

21.    As a result of TPI's substantial and continuous use and marketing of its TRADER Marks, and of its websites and services offered in connection with them, the marks have become extremely well known to the public as exclusive source identifiers of TPI's high quality reliable services, and the public has come to expect

9

websites offering and publishing classified advertising in connection with TRADER

formative marks to be associated with TPI.

## Defendants' Wrongful Acts

22.    Long after TPI's marks had become well known as source identifiers

for TPI's advertising services, in an attempt to trade on TPI's good will, Defendants

registered a host of domain names consisting of TRADER plus a vehicle, vehicle-

related, or classified advertising term as follows:

| | |
|---|---|
| 4wheelertrader.com | musclecartrader.com |
| atvtrader.com | mxtrader.com |
| atvtraders.com | offroadtrader.com |
| bigrigtrader.com | pwctrader.com |
| carpartstrader.com | racetrader.com |
| dragbiketrader.com | race-trader.com |
| dragtrader.com | recreationalvehicletrader.com |
| dualsporttrader.com | shippingtrader.com |
| enginetrader.com | snowsledtrader.com |
| eurocartrader.com | sportcompacttrader.com |
| gocartrader.com | streetbiketrader.com |
| gokartrader.com | traderads.com |
| hotrodtrader.com | wantedtrader.com |
| motorsportstrader.com | watercrafttrader.com |
| mototrader.com | |

(the "Infringing Domain Names"). True and correct copies of the database searches

for all of the Infringing Domain Names are attached as Exhibit F. All of the

registrations except those for atvtrader.com, atvtraders.com, and dirtbiketrader.com,

show one or more of the Defendants as the owner. The site reached at the

10

US2008 737439.2

atvtrader.com and atvtraders.com domains is the same format as Defendants' other sites and therefore believed to be owned by Defendants, and the records of ownership for dirtbiketrader.com have previously shown the named Defendants as owner. Moreover, a copy of the page reached at mototrader.com confirms that Defendants' "Motohost" company operates many of the sites, as shown in Exhibit G.

23. Defendants have used the Infringing Domain Names to operate websites (the "Infringing Sites") that publish advertising and merchandising classifieds, enabling third parties to advertise their vehicles and other goods for sale, in direct competition with TPI's sites. Each of the sites also prominently displays a mark (the "Infringing Marks") that corresponds to the Infringing Domain Name, such as MUSCLE CAR TRADER at the musclecartrader.com site. True and correct copies of representative pages from the Infringing Sites are attached as Collective Exhibit H.

24. Before Defendants began using the Infringing Domain Names and Marks, Defendants had actual knowledge of TPI's TRADER marks because of TPI's longstanding and extensive use of them. Defendants are also charged with constructive knowledge of TPI's rights because of TPI's multiple trademark registrations.

25.    Defendants' marks are confusingly similar to Plaintiffs' family of marks because TRADER is a salient component of each of them, and Defendants have coupled terms with TRADER that are similar to, and create the same commercial impression as, terms that TPI uses in its TRADER marks.  For example:

a)    TPI owns the mark ATV TRADERONLINE.COM, and Defendants are using ATVTRADER.COM;

b)    TPI owns the mark RVTRADER and Defendants are using RECREATIONALVEHICLETRADER.COM;

c)    TPI owns the mark FREE ADS TRADER, and Defendants are using TRADERADS.COM;

d)    TPI owns the mark BIG TRUCK TRADER and Defendants are using BIGRIGTRADER.COM; and

e)    TPI owns the mark CYCLE TRADER and Defendants are using STREETBIKETRADER.COM.

26.    Defendants' Infringing Sites were set up to offer advertising services that are identical to the Plaintiffs' service through the same channel of trade that Plaintiffs use, i.e., the Internet.  Defendants set up the sites to divert internet users seeking Plaintiffs' services to Defendants' sites.

12

27.    Defendants have used the sites intentionally to seek to cause confusion and trade on TPI's goodwill in its TRADER family of marks in order to reap undeserved profits.

28.    Defendants' use of domain names and marks that are confusingly similar to TPI's TRADER Marks deceives the public, causes irreparable harm and damage to TPI, and unlawfully generates income for Defendants.

29.    When TPI first learned of Defendants' infringement, TPI demanded that Defendants cease using the Infringing Domain Names and mark and transfer the Domain Names. A true and correct copy of the demand letter to Defendants is attached as Exhibit I.

30.    Defendants then ceased operating their sites for a period of time. However, unbeknownst to TPI, Defendants sometime later resumed and expanded the scope of the sites they had been operating and added more such sites. Upon discovery of the resumed expanded infringement, TPI again wrote to Defendants, as shown in Exhibit J.

31.    Defendants failed and refused to respond to TPI's demand letter or take down the sites. Instead, after receiving the letter, Defendants changed the domain registration records to remove their names from the public Whois records and to substitute privacy services as the public record owner. Defendants, however,

13

continue to operate the Infringing Sites, and removal of the privacy service name will reveal that Defendants individually or collectively remain the true owners of the Infringing Domains.

32.    Defendants therefore are continuing to infringe on TPI's rights and are specifically targeting consumers in this District through their highly-interactive websites, as illustrated by ads on Defendants' sites for goods located in Georgia, attached as Exhibit K.

## COUNT I
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

33.    TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

34.    By registering and using the Infringing Domain Names, Defendants have registered, trafficked in, and used domain names that are confusingly similar to TPI's TRADER Marks.  Defendants registered the Infringing Domain Names with the bad faith intent of profiting unlawfully from TPI's TRADER Marks.

35.    Defendants registered and are using the Infringing Domain Names with the intent to divert consumers from TPI's online locations to their websites accessible through the Infringing Domain Names and with the bad faith intent to

14

profit from Plaintiff's marks by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the sites.

36.    Defendants are operating their sites with the intent to profit from the use of the Infringing Domain Names and the consequent confusion of internet users.

37.    Defendants' registration and use of multiple domain names that are confusingly similar to TPI's marks evidences Defendants' bad faith intent to profit from the goodwill in TPI's TRADER marks.

38.    Defendants' actions constitute cyberpiracy in violation of 15 U.S.C. § 1125(d).

39.    The unauthorized registration and use of the Infringing Domain Names have caused and unless enjoined, Defendants' registration and continued use of the Infringing Domain Names will continue to cause, irreparable injury to TPI and to the goodwill associated with TPI's TRADER Marks.

40.    Because Defendants' infringing conduct is causing and is likely to cause substantial injury to the public and to TPI, TPI is entitled to injunctive relief, and to recover either statutory damages under 15 U.S.C. § 1117(d) or Defendants' trebled profits, together with TPI's costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

15

## COUNT II
## FEDERAL TRADEMARK AND SERVICE MARK INFRINGEMENT

41.    TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

42.    Defendants have used and promoted the Infringing Domain Names and Marks. Defendants' unauthorized use of confusingly similar imitations of TPI's registered TRADER Marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that their imitation TRADER businesses and services are affiliated, connected, or associated with TPI or have the sponsorship, endorsement, or approval of TPI, all in violation of 15 U.S.C. § 1114.

43.    Defendants' unauthorized use of confusingly similar imitations of TPI's registered TRADER Marks, notwithstanding their knowledge of TPI's ownership of the TRADER Marks, demonstrates an intentional, willful, and bad faith intent to trade on the goodwill of TPI's TRADER Marks and to cause confusion, deception, and mistake in the minds of TPI's customers and potential customers to the great and irreparable injury of TPI. Defendants have acted knowingly and has been unjustly enriched thereby.

44.    Because Defendants' conduct is causing and is likely to cause substantial injury to the public and to TPI, TPI is entitled to injunctive relief, and to

16

recover Defendants' trebled profits associated with the infringement, TPI's costs, and TPI's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT III
## FEDERAL UNFAIR COMPETITION

45.    TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

46.    Defendants' use of confusingly similar imitations of TPI's TRADER Marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' businesses are affiliated, connected, or associated with TPI or have the sponsorship, endorsement, or approval of TPI, in violation of 15 U.S.C. § 1125(a).

47.    Defendants' actions demonstrate an intentional, willful, and bad faith intent to trade on TPI's goodwill and to cause confusion, deception, and mistake in the minds of TPI's customers and potential customers by implying a nonexistent affiliation or relationship between Defendants and TPI to the great and irreparable injury of TPI.

48.    Because Defendants' unfair competition is causing and is likely to cause substantial injury to the public and to TPI, TPI is entitled to injunctive relief, and to recover Defendants' trebled profits associated with the infringement, TPI's costs, and TPI's reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

US2008 737439 2

## COUNT IV
## DECEPTIVE TRADE PRACTICES UNDER O.C.G.A. § 10-1-370 *et seq.*

49.    TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

50.    Defendants' acts constitute deceptive trade practices under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. 10-1-372 (a) (2007).

51.    Defendants' infringement has been willful and in bad faith, making this an exceptional case under O.C.G.A. § 10-1-373 (b)(2) (2007).

## COUNT V
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

52.    TPI repeats and incorporates by reference the allegations contained in Paragraphs 1 through 32 as if set forth fully herein.

53.    Defendants have used confusingly similar imitations of TPI's TRADER Marks with full knowledge of TPI's rights to the marks and with the willful and calculated purpose of trading upon TPI's established goodwill and business reputation, and in a manner calculated to imply false sponsorship of or approval by TPI, for the purpose of misleading and deceiving the public.

54.    Defendants have used confusingly similar imitations of TPI's electronic URL addresses, with full knowledge of TPI's rights, and with the willful and calculated purpose of trading upon TPI's established goodwill and business

18

reputation, and in a manner calculated to imply false sponsorship of or approval by TPI, for the purpose of misleading and deceiving the public.

55.    Defendants' conduct constitutes infringement of TPI's common law rights to the TRADER Marks and has damaged and will continue to damage irreparably TPI's goodwill and reputation unless enjoined by this Court.

56.    Independent of their liability for common law infringement, Defendants also engaged in unfair competition under the common law of Georgia and the other states in which they have engaged in their activities through their reliance on consumer mistakes and confusion, and their deliberate efforts to poach upon TPI's goodwill.

## PRAYER FOR RELIEF

WHEREFORE, TPI prays:

1.    That Defendants, their partners, agents, employees, and all persons in active concert or participation with Defendants, be permanently enjoined and restrained from:

      a)    using the Infringing Domain Names and Infringing Marks and any trademark, company name, or domain name that is confusingly similar to TPI's TRADER Marks;

19

b)    engaging in any other conduct which will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' online businesses or services with or by TPI;

c)    otherwise infringing upon TPI's TRADER Marks or unfairly competing with TPI in any manner whatsoever; and

2.    That Defendants be ordered to transfer and assign to TPI or its designee the Infringing Domain Names.

3.    That an accounting be ordered and judgment be rendered against Defendants for all profits received from the sale or provision of products or services directly or indirectly in connection with, or advertised or promoted in any manner, utilizing the Infringing Domain Names and confusingly similar imitations of TPI's TRADER Marks.

4.    That the award of profits resulting from Defendants' infringement, unfair competition, and false designation of origin of products and services be trebled.

5.    That TPI recover its actual damages.

20

US2008 737439.2

6.     That the award of actual damages from Defendants' infringement, unfair competition, and false designation of origin of products and services be trebled.

7.     That TPI recover statutory damages under 15 U.S.C. § 1117(d) in the amount of $100,000.00 per Infringing Domain Name.

8.     That Defendants be required to deliver up for destruction all advertising and promotional materials, labels, cartons, brochures, business stationary, calling cards, information sheets, posters, signs, and any and all other printed or graphic materials of any type, including the plates, molds, or other means of producing the materials, which bear references to confusingly similar imitations of TPI's TRADER Marks, or to the Infringing Domain Names.

9.     That Defendants be directed to file with the Court and serve on TPI, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

10.    That TPI be awarded its costs in connection with this suit, including reasonable attorneys' fees and expenses.

11.    That TPI have such other and further relief as the Court may deem just and proper.

21

Judith A. Powell
Georgia Bar No. 586125
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia  30309
(404) 815-6500  (telephone)
(404) 815-6555  (facsimile)

Attorneys for Plaintiffs

22

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the attached pleading complies with the font and point selections prescribed by Local Rule 5.1B and uses 14 point Times New Roman Font.

_Judith A Powell_

Judith A. Powell

23